Anthony COVIELLO, Petitioner,

v.

David L. WINN, Respondent.

Civil Action No. 06–40072–NMG.

United States District Court,
D. Massachusetts.

Nov. 13, 2006.

Mark J. Grady, United States Attorney's, Office, Boston, MA, for Respondent.

## MEMORANDUM & ORDER

GORTON, District Judge.

Petitioner Anthony Coviello ("Coviello") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 against respondent David L. Winn ("the respondent"), Warden of the Federal Medical Center at Camp Devens in Ayer, Massachusetts ("FMC Devens"). The respondent has filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

### I. *Factual Background*

Coviello was convicted of wire fraud in violation of 18 U.S.C. § 1343 in the United States District Court for the District of Connecticut in March, 2005. Following his

conviction, Coviello was sentenced to a term of 21 months imprisonment, to be followed by a three-year term of supervised release. He is presently detained at FMC Devens. Presuming that Coviello earns all good conduct time for which he is eligible, his projected statutory release date is February 6, 2007, and he will be assigned to a Community Corrections Center ("CCC") on or about December 14, 2006.

In February, 2006, Coviello made a formal request to be considered at an earlier time for CCC placement but that request was denied by the respondent in his capacity as Warden at FMC Devens on March 17, 2006. The denial was based on regulations of the Bureau of Prisons ("BOP") which have codified the BOP's decision with respect to prisoner placement. Those regulations provide that the BOP, in exercising placement discretion, will not consider CCC placement until the last 10 % of an inmate's sentence and for not more than six months in any event. *See* 28 C.F.R. §§ 570.20, 570.21. Coviello did not appeal that decision to the BOP Regional Counsel, contending that such an appeal would be futile.

Coviello contends that the BOP regulations, which limit consideration of CCC placement until the last 10 % of his sentence, are based upon an erroneous interpretation of 18 U.S.C. §§ 3621(b) and 3624(c) and are, therefore, invalid. The respondent asserts that the BOP regulations are not inconsistent with the statutory provisions and that Coviello's habeas petition should be dismissed.

## II. *Legal Analysis*

### A. Jurisdiction

The gateway issue is whether this Court has jurisdiction to review the BOP's determination of the petitioner's detention facility under 28 U.S.C. § 2241. The stat-ute provides that a district court may issue a writ of habeas corpus when an individual is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The jurisdictional thicket has recently been given extensive treatment by another session of this district court, *see Putnam v. Winn,* 441 F.Supp.2d 253, 254–56 (D.Mass. July 7, 2006) (Saris, J.), and this Court agrees with Judge Saris' assessment therein that jurisdiction is proper under § 2241.

### B. Statutory and Regulatory Framework

In 18 U.S.C. § 3621(b), Congress granted to the BOP the authority to designate an inmate's place of imprisonment. The statute provides in pertinent part:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau *may* designate *any available penal or correctional facility* that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. *The Bureau may at any time,* having regard for the same matters, *direct the transfer of a prisoner from one penal or correctional facility to another.*

18 U.S.C. § 3621(b) (emphasis added). Section 3624(c) supplemented that authority by directing the BOP to place federal inmates, shortly before the conclusion of their sentences, under conditions affording them an opportunity to prepare for re-entry into the community. Section 3624(c) states:

The Bureau of Prisons *shall,* to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (emphasis added).

Prior to December 20, 2002, the Bureau's interpretation of the statutory authority was set forth in BOP Program Statement 7310.04. Section 5 of that document stated that a CCC met the definition of a "penal or correctional facility" under 18 U.S.C. § 3621(b) and indicated that the BOP was not restricted in designating an inmate to a CCC by the time limits of § 3624(c).

In response to guidance from the Department of Justice, Office of Legal Counsel, the BOP later amended its policy to limit pre-release CCC designations to "the last ten percent of the prison sentence being served, not to exceed six months." 69 Fed.Reg. 51213 (Aug. 18, 2004). In *Goldings v. Winn,* 383 F.3d 17, 28 (1st Cir.2004), the First Circuit found that new regulation in conflict with the statute:

Under § 3621(b), the BOP has discretionary authority to designate *any* available penal or correctional facility that meets minimum standards of health and habitability as the place of a prisoner's imprisonment, and to transfer a prisoner *at any time* to such a facility. A community correction center is a correctional facility and therefore may serve as a prisoner's place of imprisonment. When as now, the plain language of a statute unambiguously reveals its meaning, and the revealed meaning is not eccentric, courts need not consult other aids to statutory construction. Because the intent of Congress is clear in its grant of discretionary authority to the BOP to transfer a prisoner to any available penal or correctional facility, we must give effect to that intent. The defendants' interpretation of § 3621(b) is contrary to the plain meaning of the statute; it is not entitled to judicial deference.

*Id.* at 28 (internal quotation, citations and footnote omitted) (emphasis added). Having found the BOP regulation in conflict with the statute, the First Circuit remanded the case to the district court to entertain the prisoner's motion for a transfer to a CCC facility, taking into consideration the § 3621(b) factors.

In a concurring opinion in *Goldings,* Judge Howard cautioned:

But just because the BOP may assign prisoners to CCCs does not mean that it must do so. As our holding states, BOP is authorized to transfer prisoners to CCCs at any time during their prison terms. Consistent with the question

presented by this appeal, the lead opinion does not address whether § 3621(b) places any constraints on the manner in which BOP may choose to exercise its discretion to make CCC placements.

*Id.* at 33 (citation omitted). Relying on *Lopez v. Davis,* 531 U.S. 230, 243–244, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), Judge Howard added:

> Even if the statutory criteria for making assignments and transfers could be read to guarantee some sort of individualized treatment, it is apparent to me that *BOP would still have the authority to make a categorical rule excluding some or all CCC placements,* except as required for end of sentence placements governed by § 3624(c).

*Id.* (footnote omitted) (emphasis added).

### C. The Categorical Imperative

On August 18, 2004, the BOP proposed a new rule governing the designation of inmates to CCCs. 69 Fed.Reg. 51213 (Aug. 18, 2004). The rule was finalized on January 10, 2005 and became effective on February 14, 2005. 70 Fed.Reg. 1659 (Jan. 10, 2005). The rule was codified in 28 C.F.R. §§ 570.20, 570.21:

> ### § 570.20 What is the purpose of this subpart?
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of prerelease custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

### § 570.21 When will the Bureau designate inmates to community confinement?

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c))).

Citing *Lopez,* the BOP expressly concluded that its categorical exercise of discretion was permissible under Supreme Court precedent upholding rules of general applicability even where a statutory scheme requires individualized determinations. 70 Fed.Reg. 1660–61 (Jan. 10, 2005).

### D. The New BOP Rules Do Not Violate Statutory Provisions

The issue before the Court is whether the February 2005 BOP Rules, which categorically foreclose transfer to a CCC prior to the last 10 % of an inmate's term (not to exceed six months), are inconsistent with 18 U.S.C. § 3621(b) which sets forth factors for the BOP to consider when determining whether a particular penal or correctional facility is "appropriate and suitable." Coviello contends that § 3621(b) requires the BOP to take those factors into account when considering every individual case, and that a categorical rule prohibiting transfer to a CCC before a certain portion of a sentence has been served denies him that individual consideration.

While the district courts are split on the issue, both the Third and Eighth Circuits have concluded that the 2005 regulations are inconsistent with *Lopez* and the requirements of 18 U.S.C. § 3621(b). *See Fults v. Sanders,* 442 F.3d 1088 (8th Cir. 2006); *Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235 (3d Cir.2005). As the Third Circuit held in *Woodall:*

> We agree with the reasoning of those courts that have found the regulations unlawful. The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations ... In sum, we believe the statute indicates that the BOP may place a prisoner where it wishes, so long as it considers the factors enumerated in § 3621.

432 F.3d at 244–45; *see also Fults,* 442 F.3d at 1091–1092 (adopting *Woodall* ). The Third Circuit distinguished *Lopez* because it involved a categorical rule which reflected congressional concern "about allowing possibly violent inmates to become eligible for pre-release." *Woodall,* 432 F.3d at 246. *See also Putnam,* 441 F.Supp.2d 253 (adopting the reasoning of *Woodall* and *Fults* ); *but see Bullock v. Winn,* Civ. No. 06–40147 (D.Mass. Nov. 8, 2006) (Saylor, J.) (reaching the opposite conclusion of *Woodall* and *Fults* ).

■ This Court agrees that the BOP is required to consider the § 3621(b) factors

in making a determination as to an inmate's place of confinement. The bottom line, however, is that discretion regarding the placement of an inmate within the penal system is completely within the purview of the BOP. *See Goldings,* 383 F.3d at 33 (Howard, J., concurring). This Court respectfully differs from the analysis in *Woodall, Fults* and *Putnam* by finding that the BOP did, in fact, consider the factors specified in § 3621(b) in crafting the categorical rule with respect to placement in CCCs. In proposing the February 2005 Rules, the BOP explained that it took into account the § 3621(b)(1) mandate to consider the resources of the facility contemplated, stating that:

> By ensuring that offenders sentenced to prison terms not be placed in CCCs except during the last ten percent of their prison sentences (not to exceed six months), the new rule will help ensure that CCCs remain available to serve the purposes for which their resources make them best suited.

70 Fed.Reg. 1659, 1660 (2004). The BOP also explained that it took into account pertinent statements issued by the Sentencing Commission in accordance with § 3621(b)(5), in particular the Commission's goal of eliminating unwarranted disparities in the sentencing and handling of inmates and eliminating any concern that the BOP might use community confinement to treat specific inmates or categories of inmates more leniently. *Id.*

In addition, the February 2005 Rules make clear that the BOP continues to consider the nonexhaustive list of factors set forth in § 3621(b) when making placement decisions. 70 Fed.Reg. at 1660 ("The Bureau will continue to evaluate these factors [set forth in § 3621(b) ] when making individual designations to appropriate facilities, and this rule will not adversely affect such individualized determinations.").

Thus, while the February 2005 BOP Rules set a percentage-of-sentence limitation for CCC placement, they do not prohibit the BOP from conducting individualized decisions to determine if and when a prisoner should be transferred to a CCC within the last ten percent of his or her sentence.

Furthermore, the legislative history of § 3621(b) supports the construction that the BOP is not required to consider all of the statutory factors in making individual placement decisions. The Senate Report states that:

> [BOP] is required to consider *such factors* as the resources of the facility considered, the nature and circumstances of the offense, the history and characteristics of the prisoner, the statements made by the sentencing court ... and any pertinent policy statements issued by the Sentencing Commission....

1984 U.S.C.C.A.N. at 3325 (emphasis added). That comment suggests that the factors are a guide to the BOP in the exercise of its discretion but not a requirement for consideration in every designation decision.[1]

In light of the foregoing, this Court adopts a slightly different interpretation of the February BOP Rules than other courts have promulgated. *See Woodall,* 432 F.3d 235 (3d Cir.2005); *Fults,* 442 F.3d 1088 (8th Cir.2006); *Putnam,* 441 F.Supp.2d 253 (D.Mass.2006) (Saris, J.). The Court finds that the new BOP Rules are not inconsistent with the controlling statute because discretion over an inmate's placement lies ultimately with the BOP, the 2005 BOP regulations take the § 3621(b) factors into account and the Court concludes that those factors were not intended to constrict the BOP's exercise of its appropriate function of determining prisoner placement. Coviello is not being detained at FMC Devens "in violation of the Constitution or laws" of the United States for purposes of 28 U.S.C. § 2241 and his petition for a writ of habeas corpus will, therefore, be dismissed.

## ORDER

In accordance with the foregoing, the respondent's motion to dismiss (Docket No. 4) is **ALLOWED** and Coviello's petition for a writ of habeas corpus (Docket No. 1) is **DENIED.**

**So ordered.**

---

**1.** The Court notes that the Court of Appeals for the Second Circuit has recently rejected such reasoning in *Levine v. Apker,* 455 F.3d 71 (2d Cir. July 10, 2006).